UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-2733(DSD/AJB)

Aric Roeller,

       Plaintiff,

v.                                                              **ORDER**

United Parcel Service
of America, Inc.,

       Defendant.

      Brian T. Rochel, Esq. and Halunen & Associates, 80 South Eighth Street, Suite 1650, Minneapolis, MN 55402, counsel for plaintiff.

      Matthew Damon, Esq., Anna R. Hickman, Esq. and Nilan, Johnson and Lewis, P.A., 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant United Parcel Service of America, Inc. (UPS). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

This employment dispute arises out of the December 21, 2010, termination of plaintiff Aric Roeller by UPS. Roeller began working for UPS in 1989. Roeller Dep. 6:19. At the time of his termination, Roeller was employed as a feeder driver at the UPS

Center (Center) in Granite Falls, Minnesota. Id. at 7:2-23. Roeller also served as a union steward for the Center. Id. at 12:19-13:1.

**Prior Safety Complaints**

Throughout his time at UPS, Roeller lodged a number of complaints regarding workplace safety. In 2009, Roeller filed an anonymous complaint with the Minnesota Occupational Safety and Health Administration (MOSHA), alleging various safety violations at the Center. Id. at 41:4-42:19. MOSHA investigated and fined UPS for two violations. Id. at 38:20-39:6. After the citation, Roeller told Center Manager Mike Blaskowski and Center Supervisor Joe Flattum that he had made the report. Id. at 39:18-21. UPS appealed, and MOSHA waived the fines. Hickman Aff. Ex. 26, ECF No. 31. On several previous occasions, Roeller had informally complained to Blaskowski, Flattum and other supervisors about safety issues. Roeller Dep. 62:3-6.

**Roeller's Last Shift**

Roeller's last shift with UPS was the overnight shift of December 20 and 21, 2010. Given the proximity of the holiday season, that shift was UPS's busiest of the year. Blaskowski Dep. 22:13-14. Before his shift began, Roeller entered a complaint in the Center's Health and Safety Log. Roeller Dep. 95:12-96:16.

Roeller noted the snowy conditions of the parking lot, writing: "Lot is out of control bad. Management or OSHA can address it. Sand or salt weekly, please." Hickman Aff. Ex. 28, ECF No. 31.

On the evening of December 20, Roeller began his shift behind schedule, as several inches of snow had fallen throughout the day in Granite Falls. Id. Exs. 15-16; Roeller Dep. 133:15-16. Roeller was scheduled to drive from Granite Falls to St. Paul,[1] complete multiple "crosstown" routes between St. Paul and Minneapolis and then return to Granite Falls. Roeller Dep. 10:4-12:6. During each shift, drivers are required to take a forty-minute unpaid meal break and a twenty-minute paid rest break, as scheduled by management. Id. at 124:6-8; Flannery Dep. 15:8-15. Drivers that fail to take these breaks as scheduled are subject to disciplinary action. Blaskowski Dep. 8:8-9. If a driver is behind schedule, he can notify a dispatcher and a "work-as-directed" driver can cover his crosstown routes while the feeder driver takes his mandatory break. Kulsrud Dep. 16:23-17:8; Flannery Dep. 18:7-19:3.

On the night in question, Roeller was scheduled to take his breaks at the Minneapolis facility. Flannery Dep. 16:4-15. Roeller had previously been warned to take his breaks as scheduled, so as not to cause delays. Derby Dep. 11:18-12:4. Roeller did not take his breaks in Minneapolis as scheduled. Roeller Dep. 114:21-

---

[1] UPS's "St. Paul" facility is located in Eagan, Minnesota, a suburb of the Twin Cities. See Roeller Dep. 10:10-13.

115:4.  Moreover, Roeller did not request a work-as-directed driver to cover his crosstown routes or inform dispatch that he was behind schedule.  Vandivier Dep. 19:21-20:15.

After completing his crosstown routes, Roeller arrived in Granite Falls behind schedule and without having taken his breaks. Roeller stopped at a coffee shop located five minutes from the Center and took his twenty-minute paid rest break and thirty minutes of his meal break.  Roeller Dep. 23:1-24:6; Hickman Aff. Ex. 16, at 000126-000127, ECF No. 31.  After his break, Roeller drove to the Center, arriving twenty-five minutes late.  Roeller Dep. 25:10-13.

**Termination**

Before Roeller arrived at the Center on the morning of December 21, a UPS employee informed Flattum that Roeller's truck was outside the coffee shop.  Flattum Dep. 15:10-23.  Flattum notified Blaskowski that the Center would be behind schedule because of the delay.  Id. at 17:3-11.  When Roeller arrived, Flattum confronted him to (1) remind Roeller "not to write on the safety log without talking to [Flattum] first" and (2) direct Roeller to Flattum's office for a conference call with Flattum, Blaskowski and supervisor Diana Hammer.  Roeller Dep. 97:3-99:3. On that call, Blaskowski asked Roeller why he was late returning to the Center.  Roeller explained that he was late because of the

4

delay in leaving Granite Falls. Id. at 99:13-18. Roeller also reiterated his concerns with the condition of the parking lot. Id. at 100:10-17.

After this conversation, Flattum and Blaskowski contacted Division Manager Jean Kulsrud to apprise her of the situation. Kulsrud Dep. 16:4-11. Blaskowski and Kulsrud then contacted Labor Manager Cindy Morrone. Morrone Dep. 13:24-14:21. Morrone spoke with Minnesota Feeder Manager Jonathan Vandivier and former Feeder Manager Steve Roeder regarding the incident. Id. at 17:19-19:6.

Vandivier reviewed Roeller's timecard, spoke with dispatch and scheduled a phone interview with Roeller. Vandivier Dep. 19:9-21:5. When Roeller arrived for work on the evening of December 21, he was instructed to call Vandivier. Id. at 21:2-5. Also present on the call were Flattum, Blaskowski and union steward Brad Larson. Hickman Aff. Ex. 19, ECF No. 31. At the conclusion of the conversation, Vandivier determined that Roeller had intentionally delayed work at the Center and terminated Roeller under the "failing to act in the best interest of the company" and "other serious offenses" provisions of the collective bargaining agreement.[2]  Vandivier Dep. 26:12-23

---

[2] Vandivier had never previously terminated an employee under the "failing to act in the best interest of the company" provision. Vandivier Dep. 27:4-7. Shortly after Roeller was terminated, however, Vandivier terminated another employee for the same reason. Id. at 29:9-15.

Roeller filed a grievance and sought reinstatement to his position. Roeller Dep. 122:18-23:10. His grievance statement did not mention safety complaints or allege retaliation. Hickman Aff. Ex. 22, ECF No. 31. The termination was upheld by both the local hearing panel and Tri-State grievance panel.

Roeller filed suit in Minnesota court on September 23, 2011, alleging retaliation in violation of the Minnesota Occupational Safety and Health Act (MOSH Act) and the Minnesota Whistleblower Act (MWA). UPS timely removed, and now moves for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon

6

mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Retaliation Claims**

Absent direct evidence of retaliation, MWA and MOSH Act retaliation claims "are analyzed under the McDonnell-Douglas three-part burden shifting test." Carlson v. Arrowhead Concrete Works, Inc., 375 F. Supp. 2d 835, 841 (D. Minn. 2005) (citations omitted). At the first stage of the analysis, a plaintiff must establish a prima facie case of retaliation by showing "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (citation omitted). An employer then has an opportunity to rebut the prima facie case by offering "some legitimate, nondiscriminatory reason for the discharge." Id. at 445. Upon such a showing, the burden shifts back to "the plaintiff to prove

that the proffered reason is merely a pretext and that retaliatory animus motivated the adverse action." Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007) (citation omitted) (analyzing MWA claim).

### A.   Legitimate, Non-Retaliatory Reason

UPS argues that, even if Roeller can demonstrate a prima facie case of retaliation, it had a legitimate, non-retaliatory reason for terminating Roeller. An employer's burden of showing a legitimate, non-retaliatory reason for termination is not onerous. Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 954 (8th Cir. 2012). Roeller does not dispute that UPS offers such a reason: that it fired Roeller for intentionally causing a delay at the Center. As a result, the burden shifts to Roeller to demonstrate a material issue of fact as to whether UPS's proffered reason is pretextual.

### B.   Pretext

To show pretext, a plaintiff "must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove [the] defendant's articulated reasons for its actions." Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 793 (8th Cir. 2011) (alterations in original) (citation and internal quotation marks omitted). Roeller argues that a jury could find UPS's proffered reason to be pretextual based on (1) the

8

timing of the termination, (2) comments made by his supervisors and (3) the articulated reasons for the termination.[3]

### 1. Timing

Roeller first argues that the temporal proximity between his safety log complaint and his termination creates a material fact issue. The timing of termination alone, however, is not sufficient to demonstrate pretext. Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005). Moreover, Roeller's actions on his last shift were an intervening event that weakens the importance of the temporal proximity between any protected conduct and his termination. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (finding that violation of employer rule was "intervening unprotected conduct [that] eroded any causal connection that was suggested by the temporal proximity of

---

[3] Roeller also argues that he had previously taken breaks in Granite Falls without being punished and that his former supervisor Maynard Derby said he could not be punished for doing so. Roeller Dep. 167:21-23. Despite this allegation, Derby met with Roeller on at least one occasion to discuss how taking breaks in Granite Falls seemed intentional and was causing a delay at the Center. Id. at 67:23-68:4. Derby understood that the one-hour break was mandatory, but asked Roeller to contact the Minneapolis dispatcher in future instances of delay, whereby he would be given his break while a different driver covered his crosstown routes. Id. at 76:4-12. In other words, Derby did not condone Roeller's practice of taking a break in Granite Falls, and in fact, specifically asked him not to do so.
  In sum, UPS could not discipline Roeller for taking the one-hour mandated break, but could punish him - as it did on December 22, 2010 - for failing to follow the direct orders of his supervisor. As a result, no reasonable jury could find that Roeller's previous practice of taking breaks in Granite Falls is indicative of pretext.

[plaintiff's] protected conduct and his termination"). As a result, the proximity of the safety log complaint to Roeller's termination does not create a fact issue as to pretext. See Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006) ("[A] mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge." (citation and internal quotation marks omitted)).

### 2. Supervisor Bias

Roeller next argues that his supervisors, who he alleges harbored retaliatory motives, influenced the decision to terminate him. Vandivier responds that he alone made the decision to terminate Roeller and that he was unaware of either the 2009 MOSHA complaint or the December 20, 2010, safety log entry. Vandivier Dep. 15:24-16:4; 35:13-17; 44:13-18. That lack of knowledge does not necessarily foreclose a retaliation claim, however, as "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person ... as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." Dedmon v. Staley, 315 F.3d 948, 949 n.2 (8th Cir. 2003) (citation omitted); see also Chappell v. Bilco Co., 675 F.3d 1110, 1120 (8th Cir. 2012) (noting that employer liability

10

based on the theory of influence from a biased non-decisionmaker requires both intent to cause an adverse employment action and proximate cause).

Roeller alleges that Kulsrud was "livid" and Blaskowski "wanted [him] fired" after he made his 2009 MOSHA complaint.[4] Rochel Decl. Ex. D, ¶ 7; Roeller Dep. 46:24-47:10. Further, these same supervisors were involved in the series of managerial reports that culminated with Morrone informing Vandivier of Roeller's role in the December 21, 2010, delay. Roeller also notes that prior to notifying his superiors of the delay, Blaskowski was aware of the December 20 safety log entry and told Roeller not to lodge complaints without first speaking to him. Roeller Dep. 97:3-99:3.

No reasonable jury, however, could find that these isolated comments - some occurring almost two years before Roeller's termination - create a material issue of fact as to pretext. Roeller has adduced no specific evidence of outward hostility or other examples of retaliatory behavior in the intervening time frame. Moreover, Kulsrud and Blaskowski, though part of the chain of command that ultimately notified Vandivier of Roeller's conduct, were not otherwise involved in Vandivier's investigation or in

---

[4] These two remarks appear to be inadmissible hearsay. See Duluth News-Tribune v. Mesabi Publ'g Co., 84 F.3d 1093, 1098 (8th Cir. 1996) ("In evaluating the evidence at the summary judgment stage, we consider only those responses that are supported by admissible evidence." (citation omitted)). For purposes of this motion, however, the court considers these statements.

fashioning Roeller's discipline. Because of their limited roles, these isolated comments are not suggestive of pretext. See Hughes v. Stottlemyre, 506 F.3d 675, 679 (8th Cir. 2007) (finding no pretext when allegedly-retaliatory supervisors "neither supervised nor directed the investigation"). In other words, Roeller presents no evidence that Blaskowski or Kulsrud either took place in the investigation leading to Roeller's termination or succeeded in affecting Vandivier's decision regarding termination. As a result, Roeller's argument amounts to nothing more than speculation. See Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1113 (8th Cir. 2001) ("The inferences Sprenger would have us draw do not follow naturally from the evidence presented, and would constitute sheer speculation."). Therefore, no reasonable jury could find pretext based on the alleged bias held by Roeller's supervisors.

### 3. Reasons for Termination

Finally, Roeller argues that UPS's explanations for his termination show pretext. Roeller contends that the two contractual provisions cited for his termination - "failing to act in the best interest of the company" and committing "other serious offenses" - are overly broad, catch-all provisions. See Vandivier Dep. 26:12-23. Roeller further stated that, in his experience representing employees in union grievances, he had never seen these provisions cited as reasons for termination.

Labor Manager Cindy Morrone stated, however, that other employees have been terminated under this provision. Morrone Dep. 30:9-12. Moreover, the court need not analyze whether Roeller's actions fall within these provisions; rather, UPS need only have had a genuine belief that Roeller's actions were prohibited. Macias Soto v. Care-Mark Int'l, Inc., 521 F.3d 837, 842 (8th Cir. 2008); see Wilking v. Cnty. of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (citations and internal quotation marks omitted)). As a result, Roeller's argument is unavailing.

Roeller further argues that UPS changed its explanation for his termination. UPS initially characterized its reason for disciplining Roeller as "failing to act in the best interest of the company" and committing "other serious offenses." Vandivier Dep. 25:12-23. UPS has since argued that it terminated Roeller for "intentionally sabotaging Center operations," and Vandivier stated that he terminated Roeller because he seemed "unapologetic" and "smug" during the phone interview. Def.'s Mem. Supp. 13; Vandivier Aff. ¶ 6. These additional explanations, however, are "not different from the reason originally given, but only a slight elaboration of that reason." Smith v. Allen Health Sys., Inc., 302

F.3d 827, 835 (8th Cir. 2002). In other words, these explanations merely provide context and elaborate as to why Roeller was terminated. As a result, no reasonable jury could find UPS's explanations indicative of pretext.

In sum, no reasonable jury could find that UPS's proffered reason for the termination was pretextual or that UPS was impermissibly motivated by Roeller's MOSHA complaint or safety log entry. Therefore, summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 27] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 22, 2013

                                               s/David S. Doty
                                               David S. Doty, Judge
                                               United States District Court